Daniel Cooper (Bar No. 153576)
EMAIL: Daniel@lawyersforcleanwater.com
LAWYERS FOR CLEAN WATER, INC.
1004A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Fax: (415) 440-4155

Linda Krop (Bar No. 118773)
EMAIL: lkrop@edcnet.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
PH: (805) 963-1622
FAX: (805) 962-3152

Attorneys for Plaintiff
SANTA BARBARA CHANNELKEEPER and
ENVIRONMENTAL DEFENSE CENTER

*Additional Plaintiffs' counsel on next page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| SANTA BARBARA CHANNELKEEPER, a California non-profit corporation, and ENVIRONMENTAL DEFENSE CENTER, a California non-profit corporation,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>DAVID SEROR, Solely in His Capacity as Chapter 7 Trustee of Halaco Engineering Co., et al.,<br><br>　　　　Defendants. | Case No.: CV 01-00456 GW (RZx)<br><br>Hon. George H. Wu<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW;**<br><br>**ORDER GRANTING PLAINTIFFS' APPLICATION FOR APPOINTMENT OF RECEIVER**<br><br>Status Conference: October 14, 2010<br>Time: 8:30 a.m.<br>Courtroom: 10 |

i

Martin McCarthy (Bar No.194915)
EMAIL: martin_mccarthy@yahoo.com
LAW OFFICE OF MARTIN MCCARTHY
9618 National Blvd.
Los Angeles, CA 90034
PH: (310) 601-6214

On June 29, 2010, Plaintiffs Santa Barbara Channelkeeper and Environmental Defense Center ("Channelkeeper") filed their Notice of Application and Application to Appoint a Receiver, and Notice of Motion and Motion Add Richard Sloan as a Defendant and Judgment Debtor ("Motion"). Dkt. Nos. 414 and 415. Chickadee filed its Opposition to Application for Appointment of Receiver and Motion to Amend Judgment ("Opposition") on July 9, 2010. Dkt. No. 416.

On July 22, 2010 the Court held a status conference and heard oral argument on Channelkeeper's Motion. Dkt. No. 419. Channelkeeper and defendants Chickadee Environmental Remediation Company ("Chickadee") (collectively "the Parties") appeared. Id. The Court held further status conferences regarding Channelkeeper's Motion on August 2, 2010 (Dkt. No. 420), August 23, 2010 (Dkt. No. 422), August 30, 2010 (Dkt. No. 423), and September 20, 2010 (Dkt. No. 427). On September 14, 2010, Channelkeeper filed a supplemental statement regarding Chickadee's accounting documents produced (Dkt. No. 424) and Chickadee filed its objections on September 16, 2010 (Dkt. No. 426).

## Findings of Fact and Conclusions of Law

Having considered the Motion, the Opposition, supplemental briefing, and evidence and oral argument presented at the five status conferences the Court hereby makes the following Finds of Fact and Conclusions of Law:

1. A district court has broad discretion in appointing a receiver and may consider a host of relevant factors, no single one of which is dispositive. *Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 845 (9th Cir. 2009).

2. Among other things, the court may consider whether there is an imminent danger of loss of property, the inadequacy of legal remedies, and whether harm to be caused by denying     the appointment would outweigh harm to

the party opposing the appointment of a receiver, if one is appointed. *Id.*; *Solis v. Matheson*, 563 F.3d 425, 438 (9th Cir. 2009).

3. Channelkeeper has a property interest in Chickadee's assets as a judgment creditor.

4. Given that Chickadee has refused to pay any amount of the judgment against it since October of 2008, almost two years ago, and has repeatedly failed to fully comply with Channelkeeper's reasonable discovery requests concerning Chickadee's financial assets and status, and whereas a receiver can take exclusive control and possession over Chickadee's assets for the purpose of executing the judgment entered in this case there is a clear necessity to protect Channelkeeper's property interest through receivership.

5. Channelkeeper has a valid claim in the underlying action as evidenced in the settlement agreement first entered by this Court on October 31, 2008 (Dkt. No. 330), subsequently modified and ordered on December 11, 2008 (Dkt. No. 345), and because Channelkeeper has obtained orders from this Court finding Chickadee in civil contempt. Dkt. Nos. 372, 374, and 386.

6. There is imminent risk of fraudulent conduct. Chickadee has repeatedly disobeyed this Court's orders, including this Court's May 4, 2010 order granting Channelkeeper's motion for civil contempt, its August 25, 2009 order requiring payment by September 25, 2009, and the U.S. Magistrate Judge's order for debtor's exam. Dkt. Nos. 372, 386, 391, 410 at ¶ 9, respectively. Further, Chickadee gave post-judgment discovery responses that were inconsistent with the information it provided during the October 2009 debtor's exam. *See* Dkt. No. 410, ¶ 20. Finally, though Channelkeeper had been seeking payment of its judgment since at least October 20, 2008, Chickadee concealed the existence of outstanding state court judgments in Texas until the debtor's examination of Chickadee, which was conducted approximately one year later. *See* Dkt. No. 410, ¶ 9.

7. There is also imminent risk of loss of Channelkeeper's property interest. Chickadee has failed to pay any portion of the judgment against it first obtained by Channelkeeper on October 31, 2008 – almost two years ago. *See* Dkt. No. 410, ¶¶ 5 and 8. Chickadee has also failed to pay according to the payment schedule stipulated and ordered by the Court to on December 11, 2008. *See* Dkt. Nos. 344 and 345; *see also* Dkt. No. 410, ¶ 6. Chickadee's President Richard Sloan testified during the examination that Chickadee lacked the cash or corporate assets sufficient to pay the judgment, and that Chickadee would not have any assets with which to pay the judgment until one or more of Chickadee's site remediation transactions cleared escrow or resulted in income to Chickadee. Dkt. No. 410, ¶ 9. However, Chickadee failed, despite repeated requests, and despite Channelkeeper's duly propounded post judgment discovery, to produce adequate financial documentation to allow Channelkeeper to identify corporate assets sufficient to satisfy the Judgment and this Court's orders. *See* Dkt. No. 410, ¶¶ 9-23. On August 2, 2010, Chickadee this Court ordered Chickadee to provide Channelkeeper all accounting documents relating to Chickadee within two weeks of that date. Dkt. No. 420. Chickadee was then ordered to have its accountant contact counsel for Channelkeeper no later than August 25, 2010 (Dkt. No. 422), and was again ordered to provide all accounting documents on September 7, 2010 (Dkt. No. 423). Chickadee failed to produce a complete set of the required documents. *See* Dkt. No. 427. Further, Richard Sloan, Chickadee's President, also disclosed at the October 2009 debtor's examination conducted by Channelkeeper that, in addition to this Court's August 25, 2009 order totaling nearly $293,000, two other outstanding money judgments were pending against Chickadee in the State of Texas totaling approximately $300,000.00. *See* Dkt. No. 410, ¶ 9. Sloan further revealed that a receiver had been appointed by a Texas state court to recover one of these judgments. *See* id.

8. The legal remedies available to Channelkeeper are, and have been to date, inadequate due to Chickadee's repeated refusal to comply with this Court's prior orders. On May 4, 2009, the Court issued an Order granting Channelkeeper's Contempt Motion, which awarded Channelkeeper the money due, as well as interest and Channelkeeper's attorneys' fees and costs, and allowed Chickadee, at its request, on or before July 13, 2009 to pay.  Dkt. No. 372.  Chickadee failed to make any payment under that order.  See Dkt. No. 410, ¶ 5.  After Channelkeeper notified the Court that no payment was made, Chickadee's President, Richard Sloan, signed and filed a Declaration with the Court on August 19, 2009 asserting that in a matter of weeks Chickadee would obtain the funds it needed to begin paying the judgment, and further requesting a 30-day extension of time in which to pay.  Dkt. No. 381.  On August 25, 2009, the Court entered an order awarding Channelkeeper all money past due, Channelkeeper's additional attorneys' fees and costs, and a contempt sanction of $1,000.00 for a total of $292,909.68.  Dkt. No. 386.  That order also awarded Channelkeeper attorneys' fees and costs for conducting the debtor examination, and interest on the judgment at the rate of 10 % per annum.  Id.  Chickadee has failed to pay any portion of that August 25, 2009 order.  *See* Dkt. No. 410, ¶ 8.  Additionally, Chickadee has not complied with the Court's orders issued on August 2, 2010, August 25, 2010, and August 30, 2010 relating to Chickadee's failure to produce post-judgment discovery documents.  *See* Dkt. Nos. 420, 422, 423, and 425.

9. There is no harm to Chickadee in appointing a receiver to protect Channelkeeper's interests and effectuate payment of the judgment against it by Chickadee.  Chickadee has already agreed to pay Channelkeeper the judgment amount as established by the settlement agreement executed on or about July 31, 2008, and entered by this Court in October 2008.  *See* Dkt. No. 330.  Chickadee has represented to the Court that          payment would be made in a declaration

4

1  from its President Richard Sloan filed on August 19, 2009 (Dkt. No. 381), and
2  during the civil contempt proceedings in May of 2009.  *See* Dkt. No. 410, ¶ 6.

3      10. Further, any harm to Chickadee is outweighed by the harm to
4  Channelkeeper because Channelkeeper is a non-profit public interest organization
5  with a valid property interest as a judgment creditor.  See Dkt. No. 410, ¶¶ 4-5.

6      11. Channelkeeper was successful on its claims underlying this action as it
7  obtained the settlement agreement entered by this Court in October 2008.  Dkt.
8  Nos. 326, 330 and 345.  Appointing a receiver with authority to control, assess, and
9  distribute, as necessary, Chickadee's assets in satisfaction of Channelkeeper's
10 property interest in the judgment will provide a reasonable remedy to
11 Channelkeeper, as discussed above, thus preventing irreparable injury resulting
12 from Chickadee's non-payment.

13     12. It is unclear when, if ever, that Channelkeeper will recover its property
14 interest in the judgment absent appointment of a receiver.  On August 19, 2009,
15 Chickadee filed a declaration stating it had insufficient funds to satisfy the
16 judgment, or that payment would be delayed until its site remediation projects were
17 approved and the funds released from escrow.  Dkt. No. 381.  Chickadee has failed
18 to make any payments on the judgment, however, and Channelkeeper has
19 established that there are other judgments entered against Chickadee in Texas (Dkt.
20 No. 410, ¶ 9); further, Chickadee has failed to provide Channelkeeper with all
21 financial records and accounts as required and ordered by this Court (*See* Dkt. Nos.
22 420, 422, 423, and 425).

23     13. In the Courts' discretion to consider the above facts, the Court finds that
24 imposing a receivership upon Chickadee for the purpose of executing the judgment
25 entered in favor of Channelkeeper in this case is warranted.

5

**[Proposed] Order**

Having reviewed Channelkeeper's Application for Appointment of Receiver and Motion to Amend Judgment to Add Richard Sloan as a Defendant and Judgment Debtor, Chickadee's Opposition to Application for Appointment of Receiver and Motion to Amend Judgment, and having considered the Parties' oral argument during the Status Conference held October 14, 2010 and the previous hearings before this Court held on August 2, 2010, August 23, 2010, August, 30, 2010, and September 20, 2010, and having made the above Findings of Fact and Conclusions of Law:

IT IS HEREBY ORDERED that David J. Pasternak is appointed as Limited Receiver of Chickadee Environmental Remediation Company, effective upon filing of a Receiver's oath in this Court to faithfully perform his duties. The Receiver is appointed for the limited purpose of executing the judgment entered in this case, including all past and future awards of attorneys' fees and costs, and all receivership costs of administration.

IT IS FURTHER HEREBY ORDERED that the Receiver's duties and powers are as follows:

I.     <u>Duties and Authority of the Receiver</u>

   a.   Exclusive Management, Possession, and Control

14. The Receiver has full and exclusive power, duty, and authority to administer and manage all of the business affairs, funds, assets, choses in action and any other property of Chickadee, and is vested with all of the powers of the shareholders, directors and officers of Chickadee. No one other than the Receiver has authority to file any voluntary bankruptcy petition on behalf of Chickadee.

15. The Receiver is authorized to, and shall, take exclusive possession and control of any and all documents, records, property and assets, wherever located

within or without this state, of Chickadee including, but not limited to, the following:

> All accounts, contract rights, general intangibles and payment intangibles, including without limitation, contracts and accounts, all proceeds thereof, and all writings or other records in whatever form (including electronic) which document any of them, including, but not limited to, written agreements, purchase orders, invoices, receipts, checkbooks, check registers, passbooks, journals, ledgers and books of account from which Chickadee receives payments or other data used in or related to its business.

The Receiver is also authorized to, and shall, take possession of any and all real property owned by Chickadee, or in which Chickadee has an interest. Title of any such assets taken under the Receiver's exclusive possession and control is vested by operation of law in the Receiver. The Receiver shall comply with the requirements of 28 U.S.C. § 754.

16. The Receiver is authorized to take all necessary steps to receive, collect, and review all mail addressed to Chickadee. At the Receiver's discretion, the Receiver is authorized to instruct the U.S. Postmaster to reroute, hold, and/or release said mail to the Receiver. Mail the Receiver reviews in performance of his duties, will promptly thereafter be made available to Chickadee at its request for inspection.

17. The Receiver is authorized to, and shall, take possession of all bank accounts, wherever located within or without this state, and shall receive possession of any money on deposit in said bank accounts. Any bank or other financial institution maintaining any such account shall, upon presentation of a copy of this order, immediately deliver any such funds to the Receiver and shall

1 provide the Receiver with copies of any documents or records concerning such accounts as the Receiver may request.

18. The Receiver is authorized to, and shall, demand, collect, and hold all accounts receivable of Chickadee and all proceeds thereof including, but not limited to, any escrow accounts containing funds to be dispersed upon the occurrence of a particular event.

19. The Receiver is authorized to, and shall, present for payment any checks, money orders, negotiable instruments or commercial paper through which Chickadee is compensated for its goods and/or services. The Receiver is authorized to, and shall, endorse the same and collect the proceeds, including, but not limited to, the proceeds from any escrow accounts containing funds to be dispersed upon the occurrence of a particular event.

20. The Receiver is authorized to, and shall, cause to be sold any real property taken under the Receiver's exclusive possession and control if such sale is necessary to the discharge of the duties and powers set forth in this order.

21. The Receiver is authorized to, and shall, deposit all proceeds collected and taken under the Receiver's exclusive possession and control into an interest bearing bank account ("Receiver Trust Account") to be thereafter used and maintained by the Receiver in furtherance of the Receiver's duties and powers set forth herein. The Receiver shall keep detailed accounting records of all deposits to and all expenditures from the Receiver Trust Account, and shall maintain those accounting records until the expiration the receivership.

22. The Receiver may employ agents, employees, clerks, accountants, attorneys, and property managers to administer the receivership estate, purchase materials, supplies and services, and pay for them at the ordinary and usual rates out of the funds which shall come into the Receiver's possession and shall do all things and incur the risks and obligations ordinarily incurred by

8

owners, property managers and operators of similar properties and enterprises as such Receiver.  No such risk or obligation so incurred shall be the personal risk or obligation of the Receiver, but shall be the risk and obligation of the receivership estate.

23. The Receiver and his office personnel shall be paid their usual hourly billable rates, and reimbursement of costs.  The Receiver's current hourly billable rate is $495.  The Receiver shall prepare and serve monthly statements reflecting the Receiver's fees and administrative expenses, including fees and costs of agents, accountants and attorneys engaged by the Receiver to assist in the administration of the receivership estate, incurred for each monthly period in the operation and administration of the receivership estate.  Fees and expenses shall be submitted to the Court for its approval and confirmation in the form of either a properly noticed interim request for fees, stipulation of all parties, or Receiver's Final Accounting and Report.

24. The Receiver is authorized to, and shall, execute and prepare all documents, and perform all acts, either in Chickadee's name or in the Receiver's own name which are necessary or incidental to preserving, protecting, managing, and controlling Chickadee's assets, accounts, and other real or personal property.

25. The Receiver is authorized enter into contracts as the Receiver reasonably believes necessary for the maintenance and operation of Chickadee and the purposes of this receivership.

26. The Receiver is authorized to, and shall, disperse funds deposited in the Receiver Trust Account in satisfaction of the judgment entered in this case against Chickadee in favor of Channelkeeper, including all past and future awards to Channelkeeper of attorneys' fees and costs, and interest, at which time there are sufficient deposits to make such dispersal.  The Receiver shall not expend any funds deposited into the Receiver Trust    Account for any purpose other than that

expressly provided in this order. In the event that the Receiver determines that the Receiver Trust Account will not have a balance sufficient to satisfy the judgment entered in this case, including all past and future awards of attorneys' fees and costs and interest, the Receiver may apply to this Court for further instructions and/or powers, including, but not limited to, an application to include the personal assets of Richard Sloan in the receivership estate in accordance with the investigation into Chickadee's corporate status as described below.

27. The Receiver is authorized to take depositions of Chickadee, its agents, directors, officers, shareholders, employees, and/or third parties subject to three (3) business days notice as the Receiver deems necessary to carry out the duties and powers set forth in this order. Notice of such deposition will be sufficient if made orally, by facsimile, electronic mail, or overnight courier. These depositions may be taken telephonically. The Receiver is also authorized to serve interrogatories, requests for the production of documents, and requests for admissions upon Chickadee, its agents, directors, officers, shareholders, employees, and/or third parties. The party receiving such discovery requests shall respond within seven (7) business days of service. Service of discovery requests shall be sufficient if made by facsimile, electronic email, or overnight courier.

28. The Receiver is authorized to institute, prosecute, defend, compromise, adjust, intervene in, or become party to such actions or proceedings in state or federal courts or arbitrations or mediations as may in his opinion be necessary or proper for the protection, maintenance, and preservation of Chickadee or its property or the carrying out of the terms of this order, and likewise to defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted against him as receiver or against Chickadee, and also to appear in and conduct the defense of any suit or adjust or compromise any actions or proceedings now pending in any court or arbitration or mediation by or against Chickadee

1  where such prosecution, defense, or other disposition of those actions or
2  proceedings will in the judgment of the Receiver be advisable or proper for the
3  protection of Chickadee or its property.
4      29. The Receiver is authorized to engage a locksmith for the purposes of
5  gaining entry to any Chickadee business location or real property, and through any
6  security system, in order to obtain any documents to which the Receiver is entitled
7  pursuant to this Order, as well as giving any notices which may be required in
8  performing the Receiver's duties. The Receiver may either have the locks changed
9  or have a key created that will work for the locks.
10     30. The Receiver shall, within thirty (30) days of the effective date of this
11 appointment, file and serve an inventory setting forth a list of all assets,
12 documents, and records of which the Receiver has taken exclusive possession
13 pursuant to this order to the Court. The Receiver shall file a supplemental
14 inventory if he takes possession of any additional assets, documents and/or records
15 pursuant to this order after thirty (30) days of the effective date.
16     31. The Receiver shall, within sixty (60) days after the effective date of this
17 appointment, file and serve a detailed accounting of Chickadee's assets listed in the
18 inventory with the Court. In this report, the Receiver shall assess whether the
19 inventoried assets are sufficient to satisfy the judgment entered in this case, or
20 whether the inventoried assets will in the future be sufficient to satisfy the
21 judgment.
22     32. The Receiver shall also investigate whether Chickadee is, or was, under
23 capitalized, has failed to meet corporate formalities, and is controlled by Richard
24 Sloan. The Receiver shall conduct this investigation by examining the documents,
25 records, and other relevant information taken into the Receiver's exclusive control
26 and possession under the duties and powers set forth in this order. Within sixty
27 (60) days of the effective date of this           order, the Receiver shall file his

findings relating to this investigation with the Court along with the records and other documentation supporting those findings. The Receiver may in accordance with such findings, at his discretion, apply for an order from this Court to add Sloan as a defendant and judgment debtor. The Receiver may seek the assistance of legal counsel in making this application; such legal counsel is entitled to reasonable compensation payment of which shall be approved by the Court when included in the Receiver's interim request for fees. The Court will consider an application to add Sloan as a defendant and judgment debtor, and will amend or modify this order as warranted.

33. The parties, and each of them, on receipt of this order shall provide the Receiver with any tax identification numbers utilized by Chickadee. The Receiver shall also be entitled to utilize such tax identification numbers during his operation of the receivership estate.

34. The Receiver shall determine upon taking possession of the estate whether in the Receiver's judgment there is sufficient insurance coverage. With respect to any insurance coverage, the Receiver shall be named as an additional insured on the policies for the period that the Receiver shall be in possession of the estate. If sufficient insurance coverage does not exist, the Receiver shall immediately notify the parties to this lawsuit and shall have thirty (30) days to procure sufficient all-risk and liability insurance on the estate (including if appropriate earthquake and flood insurance) provided, however, that if the Receiver does not have sufficient funds to do so, the Receiver shall seek instructions from the Court with regard to whether insurance shall be obtained and how it is to be paid for. If consistent with existing law, the Receiver shall not be responsible for claims arising from the lack of procurement or inability to obtain insurance.

35. Upon reasonable notice, the parties shall have access to all non-

privileged documents in the Receiver's possession, and may copy any such documents at their expense.

36. If the Receiver receives notice that a bankruptcy has been filed and part of the bankruptcy estate may include property that is the subject of this order, the Receiver shall have the following duties:

    a. The Receiver shall immediately contact plaintiffs' counsel and determine whether plaintiffs intend to move in the bankruptcy court for an order for (1) relief from the automatic stay, and (2) relief from the Receiver's obligation to turn over the property (11 U.S.C. § 543). If the party has no intention to make such a motion, the Receiver shall immediately turn over the subject property to the appropriate entity, either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession – and otherwise comply with 11 U.S.C. § 543.

    b. If any party intends to seek relief immediately from both the automatic stay and the Receiver's obligation to turn over the subject property, the Receiver may remain in possession and preserve the property pending the ruling on those motions (11 U.S.C. § 543(a)). The Receiver's authority to preserve the property shall be limited as follows:

    c. The Receiver may continue to collect any income;

    d. The Receiver may make only those disbursements necessary preserve and protect the subject property;

    e. The Receiver shall not execute any new long-term contracts; and

    f. The Receiver shall do nothing that would effect a material

     change in the circumstances of the subject property.

   g.  If no party files a motion within 10 court days after receipt of notice of the bankruptcy filing, the Receiver shall immediately turn over the subject property to the appropriate entity, either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession and otherwise comply with 11 U.S.C. § 543.

37. Within sixty (60) days of satisfaction of the judgment entered in this case, including all past and future awards of attorneys' fees and costs, and interest to Channelkeeper, the Receiver shall submit to the Court a Final Accounting and Report of all remaining assets, deposits, real or personal property, and any other tangibles or intangibles taken under the Receiver's exclusive control and possession.  The Final Accounting and Report shall include detailed information relating to (1) total proceeds received listed by source, (2) total expenditures made enumerated by major categories, (3) net amount of any surplus or deficit, and (4) any other information the Receiver has in his exclusive control and possession as authorized by this order.

II.  <u>Cooperation</u>

 a. Defendants

38. Chickadee, and all agents, or persons within the employ, of Chickadee (including contract employees), and all persons in concert and participation with Chickadee and its employees, shall fully cooperate with the Receiver in the discharge of his duties and powers under this order, and shall promptly respond to all inquiries and requests related to compliance with the Court's orders in this case. Chickadee, its agents, and/or employees shall take no action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the Receiver in the conduct of the Receiver's duties and powers authorized   by this order.

39. Any such person who interferes with the Receiver's access, as authorized by this order, or otherwise thwarts or delays the Receiver's performance of his duties under this Order, shall be subject to contempt proceedings before this Court. The Receiver may, as necessary, seek the assistance from legal counsel, in ensuring full cooperation by Chickadee, its agents, and/or employees, including filing civil contempt proceedings against those who do not cooperate.

40. Chickadee and its officers, directors, agents, employees, shareholders, and other persons who are in custody, possession, or control of any assets, books, records, or other property of Chickadee shall deliver forthwith upon demand such property, monies, books and records to the Receiver, and shall grant to the Receiver the authorization to be a signatory as to all accounts at banks, brokerage firms, escrow companies, or financial institutions which have possession, custody or control of any assets or funds in the name of or for the benefit of Chickadee, including, but not limited to, any escrow accounts containing funds the dispersal of which is contingent upon the occurrence of a particular event.

41. Unless authorized by the Receiver, Chickadee, its agents, and/or employees, shall take no action, nor purport to take any action in the name of or on behalf of Chickadee.

    b. Counsel

42. Counsel for Chickadee shall cooperate with the Receiver's duties and powers under this order, and shall turn over any and all non-privileged records, documents, and other information in counsel's possession relevant to the Receiver's duties and powers.

    c. Third Parties

43. All banks, brokerage firms, financial institutions, and other business

15

entities, including but not limited to, escrow companies, which have possession, custody or control of any assets, funds or accounts in the name of, or for the benefit of Chickadee shall cooperate in the granting of control and authorization as a necessary signatory as to all assets and accounts to the Receiver.

44. No bank, savings and loan association, or other financial institution, or any other person or entity shall exercise any form of set off, alleged set off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court.

III.     Bond and Jurisdiction

a. Bond

45. No bond shall be required in connection with appointment of the Receiver.  Except for an act of gross negligence, the Receiver shall not be liable for any loss or damage incurred by Chickadee or by the Receiver's officers, agents, or employees, or any other person, by reason of any act performed or omitted to be performed by the Receiver in connection with the discharge of the Receiver's duties and powers.

b. Jurisdiction

46. The Receiver shall be relieved of all duties and powers authorized by this order, and the receivership herein imposed shall expire, upon satisfaction of the judgment entered in this case, including all past and future awards of attorneys' fees and costs, and interest, to Channelkeeper, and approval of the Receiver's final accounting and report.  Any and all remaining assets, records, documents, and other tangibles or intangibles taken under the Receiver's exclusive control and possession, as set forth in the final accounting and report, shall be delivered to Chickadee within thirty (30) days after the termination of the receivership.

47. In the event the judgment entered in this case is not satisfied, or for other extenuating circumstances, upon           application to and approval from this

1 Court the Receiver may be relieved of his duties and powers.

2     48. This Court shall retain jurisdiction of this matter for all purposes. The
3 Receiver may at any time apply to this Court for any further instructions or powers
4 necessary to enable the Receiver to perform his duties properly.

6 IT IS SO ORDERED.

7 Dated: October 14, 2010

                                                  _____

                                                  Honorable George H. Wu
                                                  United States District Court